Filed 1/6/26  P. v. Pineda CA4/2
Opinion following transfer from Supreme Court
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E080666 |
| v. | (Super.Ct.No. FVA1201409) |
| MICHAEL ANDREW PINEDA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Katrina West, Judge.  Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Lynne G. McGinnis and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

1

## INTRODUCTION

In 2014, defendant and appellant Michael Andrew Pineda pled guilty to second degree murder and admitted a Penal Code[1] section 12022.53, subdivision (b) personal firearm use allegation.  In 2022, he petitioned for resentencing pursuant to section 1172.6 (former section 1170.95).[2]  The trial court denied his petition at the prima facie stage, concluding defendant was ineligible for relief because the preliminary hearing transcript established that he was the actual shooter.

On appeal, defendant originally argued that the court improperly denied his petition at the prima facie stage because the record of conviction did not establish as a matter of law that he was ineligible for resentencing, and the court could not have denied his petition without improperly engaging in factfinding.  In our prior unpublished opinion, we concluded that the trial court erred in relying on the preliminary hearing transcript to deny the petition, since defendant did not admit the truth of the evidence adduced at the preliminary hearing and the court engaged in judicial factfinding in finding that he was the actual shooter.  We reversed the trial court's order denying the resentencing petition and remanded for the trial court to issue an order to show cause.

---

[1]  All further statutory references will be to the Penal Code unless otherwise indicated.

[2]  Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6, with no substantive change in text.  (Stats. 2022, ch. 58, § 10.)  We will cite to section 1172.6 for ease of reference.

The California Supreme Court granted review and transferred the matter back to this court with directions to vacate our opinion and reconsider the cause in light of *People v. Patton* (2025) 17 Cal.5th 549 (*Patton*). By separate order, we vacated our decision. We now affirm.

FACTUAL AND PROCEDURAL BACKGROUND[3]

Officer Jones testified that he was on duty on September 20, 2012, when he received a call concerning a shooting at a location in San Bernardino County. He went there and found the victim's body in the street, with multiple gunshot wounds to his head and body. There was a single spent bullet next to the body but no cartridge cases, indicating that the firearm used was most likely a revolver.

Officer Betty testified that he was on duty at about 10:00 p.m.[4], and a white sedan caught his attention by its erratic driving. Officer Betty conducted a traffic stop of the sedan, which was carrying three people — T.G., L.G., and defendant. Another officer found a partially loaded revolver under the center console.

Officer Farmer, the primary officer investigating the victim's murder, testified that he interviewed T.G. and L.G. T.G. told him she was driving her white sedan with L.G. in the front seat, and defendant, R.R. (defendant's half-brother), and the victim in the back

---

[3] Facts taken from the preliminary hearing transcript are provided for background purposes and to provide context for the parties' arguments.

[4] We note the prosecutor questioning Officer Betty asked if he was on duty on September 21, and Officer Betty said, "Yes." However, it appears the prosecutor misspoke when she referred to September 21, since the other officers testified that the incident occurred on September 20, 2012.

3

seat. The three men in the back seat began arguing. The fight became so violent that T.G. pulled the car over to the side of the road. The three men got out of the car and continued fighting. T.G. said defendant had a gun and shot the victim. She heard two shots, saw the flame come out of the gun, and saw the victim fall to the ground. Then, the others got back into the car and left. T.G. said defendant told the others they should not tell anyone what happened, otherwise he "wouldn't hesitate" to shoot them. Officer Farmer testified that when he interviewed L.G., she gave a similar story.

Officer Farmer also interviewed defendant's girlfriend, J.C., at whose house defendant and the others stayed the night following the murder. Officer Farmer testified that J.C. said T.G., L.G., and R.R. slept in the same room that night because defendant "wanted to keep the two girls and [R.R.] together." J.C. said defendant asked if he could keep his handgun at her house, and when she said no, he took it back to T.G.'s car. Officer Farmer testified that J.C. said defendant told her that "when they went to take care of the business with somebody that he had to deal with, it didn't go the way he wanted it, and he had to shoot the guy." J.C. did not know the name of the victim.

Officer Farmer also testified about his interview with R.R. R.R. told him he was picked up by defendant and an unknown female in a white car. They also picked up the victim and then drove to a house to buy methamphetamine. R.R. was sitting in the back seat. He said defendant and the victim got into an argument, which escalated into a physical fight. R.R. further said T.G. pulled over, and he, defendant, and the victim got out of the car. Defendant and the victim continued fighting, and defendant shot the

4

victim.  R.R. believed he heard three shots.  Officer Farmer testified that R.R. told him he (R.R.) did not shoot the victim.

On January 13, 2013, defendant and R.R. were charged by information with murder.  (§ 187, subd. (a), counts 1 & 5.)  The information also charged defendant with dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1), count 2 & 3) and possession of a firearm by a felon (§ 29800, subd. (a), count 4).  As to count 1, the information alleged that defendant personally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (d)), personally discharged a firearm (§ 12022.53, subd. (c)), and personally used a firearm (§ 12022.53, subd. (b)).  As to count 5, the information alleged that a principal was armed with a firearm.  (§ 12022, subd. (a)(1).) The information further alleged that defendant had served four prior prison terms. (§ 667.5, subd. (b).)

On July 30, 2014, defendant pled guilty to the lesser included offense of second-degree murder and admitted the section 12022.53, subdivision (b) personal firearm use allegation.  In exchange, the court sentenced him to a total term of 15 years to life in state prison, plus 10 years on the firearm enhancement, and it dismissed the remaining counts and allegations.  Both counsel stipulated that the court could consider the preliminary hearing to establish a factual basis for the plea.

On May 18, 2022, defendant filed a petition for resentencing pursuant to section 1172.6.  He submitted a preprinted form with checked boxes indicating his belief that he met the statutory requirements for relief. {CT 54-55}

5

On July 18, 2022, the prosecutor filed an opposition to defendant's petition, alleging that defendant was not eligible for relief since he was the actual killer and personally used a firearm in the commission of the killing. The prosecution's statement of facts was taken from the police reports, the preliminary hearing transcript, and the sentencing report. {CT 58-59, 62}

Defendant filed a brief in support of his petition, arguing that the court can rely on the record of conviction when assessing the prima facie showing, but it cannot engage in factfinding. Defendant asserted that the prosecution contended he was not eligible for relief because he entered a plea after the preliminary hearing, and he stipulated to the preliminary hearing transcript as the factual basis for the plea. However, *People v. Davenport* (2021) 71 Cal.App.5th 476 (*Davenport*) "made clear" that "stipulating to a preliminary hearing or a police report as the factual basis for the plea does not equate to allowing the court to consider the facts from the preliminary hearing or police report at the prima facie stage." Defendant concluded that, "with what the court can consider at this point in time," he had made a prima facie showing. {CT 87-88}

On January 27, 2023, the court held a hearing on the petition. At the hearing, the prosecutor asked the court to deny the petition based on the plea and the preliminary hearing transcript, which showed defendant was the actual shooter. Citing *Davenport*, *supra*, 71 Cal.App.5th 476, defense counsel argued that the court could not consider the facts from the preliminary hearing transcript "in this situation" where the parties stipulated to the preliminary hearing as the factual basis for the plea. {RT 203} The

6

prosecutor pointed out that, in *Davenport*, the parties did *not* stipulate to the preliminary hearing as a factual basis for the plea; however, in the instant case, there was a stipulation. The prosecutor also stressed that, ultimately, defendant pled guilty to second degree murder and admitted the firearm enhancement. {RT 204}

The court noted both counsel submitted that the preliminary hearing would suffice as a factual basis for the taking of the plea, multiple witnesses identified defendant as the shooter, and there were no other suspects with regard to the shooting. The court thereby concluded that the record contradicted defendant's statement in his petition that he could not be found guilty of second degree murder, and it was impossible for him to make a prima facie showing. The court denied his petition.

DISCUSSION

The Trial Court Properly Denied Defendant's Petition

The Supreme Court transferred the matter back to us with directions to vacate our opinion and reconsider the cause in light of *Patton, supra,* 17 Cal.5th 549. In supplemental briefing to this court, the People argue that *Patton*, *supra*, 17 Cal.5th 549 confirms that the trial court could properly consider the preliminary hearing transcript to rebut defendant's conclusory "checkbox allegations" of entitlement to relief under section 1172.6 at the prima facie stage, and that such reliance does not constitute impermissible factfinding. {Resp's Supplemental Brief (RSB) 6-7} The People assert that defendant offered no contradictory facts to rebut the preliminary hearing transcript, which established that he was the actual killer. Thus, the court properly denied his petition.

7

{RSB 8-9} Defendant has not filed a supplemental brief.  We agree with the People that the record of conviction establishes defendant's ineligibility for resentencing under section 1172.6 as a matter of law.

A.  *Relevant Law*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), effective January 1, 2019, was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)  Senate Bill 1437 also created a procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended.  (Stats. 2018, ch. 1015; *Lewis*, at p. 957.)

Under section 1172.6, the relief process begins with the filing of a petition containing a declaration that all requirements for eligibility are met (§ 1172.6, subd. (b)(1)(A)), "including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [Penal Code] Section 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill 1437 (§ 1172.6, subd. (a)(3))."  (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).)

If the petition complies with the requirements of section 1172.6, subdivision (b)(1), "the court shall hold a hearing to determine whether the petitioner has made a

8

prima facie case for relief." (§ 1172.6, subd. (c).)  Where a petitioner has made the requisite prima facie showing that he is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts.  (§ 1172.6, subds. (c) & (d)(1).)

At the prima facie stage, the court may deny a petition only if the petitioner is ineligible for relief as a matter of law.  (*Lewis*, *supra*, 11 Cal.5th at p. 966.)  In other words, the petition and the record of conviction must "establish conclusively that the defendant is ineligible for relief."  (*Strong*, *supra*, 13 Cal.5th at p. 708.)  This is a pure question of law that we review de novo.  (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)  "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for . . . relief, the prima facie inquiry . . . is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, '"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause."'  [Citation.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'"  (*Lewis*, at p. 971.)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the

9

exercise of discretion.'" (*Id.* at p. 972.) "[T]he 'prima facie bar was intentionally and correctly set very low.'" (*Ibid.*)

B. *The Court Properly Relied Upon the Preliminary Hearing Transcript*

At the time of the parties' initial appellate briefing, courts were divided on the role of the preliminary hearing transcripts at the prima facie stage of section 1172.6 resentencing proceedings. Some courts held that a trial court could rely on preliminary hearing transcripts to deny resentencing relief at the prima facie stage, only if the petitioner stipulated to the transcript as the factual basis for the plea. (*Patton, supra*, 17 Cal.5th at p. 561.) Some appellate decisions held the trial court could not rely on the preliminary hearing transcript at the prima facie stage because such reliance necessarily required impermissible factfinding. (*Id.* at pp. 561-562.)

The Supreme Court resolved the disagreements in *Patton*, *supra*, 17 Cal.5th 549 and held that in making the prima facie determination, a preliminary hearing transcript "preceding a guilty plea" (*Patton*, *supra*, 17 Cal.5th at p. 568) is part of the record of conviction, and the trial court may "rely on unchallenged, relief-foreclosing facts within a preliminary hearing transcript to refute [a petitioner's] conclusory, checkbox allegations" in a form section 1172.6 petition. (*Id.* at p. 564.)

*Patton* acknowledged that the Supreme Court previously "placed limits on the use of preliminary hearing transcripts to prove disputed facts, but [stated that] these limits are inapplicable here." (*Patton, supra*, 17 Cal.5th at p. 568.) The Supreme Court explained that, in Patton's case, resolution of the prima facie inquiry "did not call for resolution of a

10

factual dispute" and "[r]ather than resolving a contested factual dispute, statements within [the] preliminary hearing transcript contributed specific factual assertions about [the petitioner's] conviction — namely, that it was premised on him being the sole shooter. [The petitioner's] conclusory checkbox allegations alone could not create a factual dispute about whether he played a meaningfully different role in the attempted murder." (*Id.* at pp. 568-569.)

*Patton* further stated: "To the extent Courts of Appeal have conditioned use of preliminary hearing transcripts at the prima facie stage on whether a defendant, when pleading guilty, stipulated to the transcript or its contents, they have overlooked the issue-framing role a transcript can play at the prima facie stage of the resentencing process." (*Patton, supra*, 17 Cal.5th at p. 569.)

The Supreme Court held that "a section 1172.6 petitioner who, despite having access to counsel upon submission of a facially sufficient petition, offers only conclusory allegations of entitlement to relief, in response to a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory, has not, thereby, made a prima facie showing. Where facts from the record of conviction are undisputed, accepting them over contrary legal allegations that are merely conclusory is not "'factfinding involving the weighing of evidence or the exercise of discretion.'"" (*Patton, supra,* 17 Cal.5th at pp. 565-566.)

*Patton* further explained that "petitioners need not, at the prima facie stage, meet an evidentiary burden of proof to establish entitlement to relief, such as the burden of

11

proof applicable to the People if trying to defeat relief at the later [section 1172.6,] subdivision (d)(3) [evidentiary] hearing.  Rather, *petitioners confronting a record of conviction that demonstrates relief is unavailable have the burden of coming forward with nonconclusory allegations to alert the prosecution and the court to what issues an evidentiary hearing would entail.*  It follows from what we have said already that should a trial court encounter a material fact dispute, the court may not resolve that dispute at the prima facie stage and should instead grant petitioner an evidentiary hearing, assuming relief is not otherwise foreclosed." (*Patton, supra*, 17 Cal.5th at pp. 566-567, italics added.)

In light of *Patton*, we find that the trial court here properly relied on the preliminary hearing transcript to make the prima facie determination that defendant was the actual killer and was therefore ineligible for resentencing.  As in *Patton*, defendant "submitted a preprinted form declaration with checked boxes indicating his belief that he met the statutory requirements for relief." (*Patton, supra*, 17 Cal.5th at p. 563.)  "In response, the People offered the preliminary hearing transcript." (*Ibid*.) {RT 203} The transcript showed that T.G., L.G., J.C., and R.R. all identified defendant as the shooter of the victim.  {Suppl. CT 26, 29, 41, 43} In addition, defendant's plea to the section 12022.53, subdivision (b) enhancement for personal use of a firearm during the commission of the murder "tended to corroborate this view." (*Patton, supra*, 17 Cal.5th at p. 563.)  Defendant did not refute or even challenge the facts presented in the preliminary hearing transcript.  He "offer[ed] only conclusory allegations of entitlement

12

to relief, in response to a record of conviction that demonstrate[d] [his] conviction was under a still-valid theory." (*Id*. at p. 565.)

We note defendant's argument in his opening brief that the court erred in relying on facts taken from the preliminary hearing transcript, since the testimony at the preliminary hearing was hearsay given by police officers who did not personally observe the incident. He contended that since the hearsay testimony would be inadmissible at an evidentiary hearing (§ 1172.6, subd. (d)(3)), it could also not be considered to determine eligibility at the prima facie stage. However, defendant did not object in the trial court on hearsay grounds, thus forfeiting the challenge on this appeal. (See *People v. Vance* (2023) 94 Cal.App.5th 706, 714 [failure to object to the trial court's reliance on allegedly inadmissible evidence at a section 1172.6 hearing forfeits the issue on appeal].) At the prima facie hearing, he instead argued that the court could not consider the facts from the preliminary hearing "in this situation" where the parties stipulated to the preliminary hearing transcript as a factual basis for the plea. {RT 203-204} Defendant cited *Davenport*, *supra*, 71 Cal.App.5th 476, which held that "[t]he trial court engaged in 'impermissible factfinding' at the prima facie stage by relying on facts taken from the preliminary hearing transcript that were not stipulated to or admitted." (*Davenport*, *supra*, 71 Cal.App.5th at p. 482.) Notably, *Patton* disapproved of decisions such as *Davenport* that "conditioned the use of preliminary hearing transcripts on whether a petitioner previously admitted the truth of testimony contained therein or stipulated to the transcript as the factual basis of a plea." (*Patton, supra*, 17 Cal.5th at p. 569.)

13

In sum, the trial court correctly concluded that defendant had not, on the record before it, made a prima facie showing.  (See *Patton, supra,* 17 Cal.5th at pp. 565, 569.) Thus, it properly denied his resentencing petition.

<u>DISPOSITION</u>

The order summarily denying defendant's petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>FIELDS                    </u>
                                                                                    J.

We concur:

<u>MILLER                    </u>
               Acting P. J.
<u>MENETREZ            </u>
                              J.

14